**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000381**
**02-FEB-2023**
**07:49 AM**
**Dkt. 104 SO**

NO. CAAP-22-0000381

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF EAC

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(Case Nos. FC-S No. 19-1-0012 and 2GD211000054)

**SUMMARY DISPOSITION ORDER**
(By:  Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

Appellant EC (**Father**) and Cross-appellant UH (**Mother**) appeal from the "**Order Appointing Guardian** of the Person of the Minor" entered by the Family Court of the Second Circuit on June 16, 2022.[1]  For the reasons explained below, we affirm the Order Appointing Guardian.

Father and Mother are the biological parents of EAC (**Child**).  Child was taken into protective custody by the Maui Police Department shortly after birth.  The State of Hawaiʻi Department of Human Services (**DHS**) filed a petition to place Child in temporary foster custody on October 2, 2019 (the **Temporary Foster Custody Case**).  A hearing was set for October 4, 2019.

Father and Mother, both self-represented, attended the October 4, 2019 hearing.  The family court appointed separate counsel for Father and Mother.  Another hearing was held on

---

[1]  The Honorable Michelle L. Drewyer presided.

October 15, 2019.  Father and Mother appeared, each with counsel.
DHS was awarded continuing temporary foster custody over Child.
A further hearing was set for November 19, 2019.

Father and Mother appeared at the November 19, 2019
hearing with their respective counsel.  DHS social worker
Christina Satyo **Dosland** also appeared at the hearing.  Father and
Mother stipulated to foster custody and agreed to participate in
the services recommended by DHS.  Foster custody of Child was
awarded to DHS.  Father requested, and the family court ordered,
"an ICPC[2] referral for [MC, Child's **Grandfather**], who's in
Albuquerque, New Mexico."  A further hearing was set for
December 31, 2019.

Father and Mother appeared at the December 31, 2019
hearing with their respective counsel.  The family court approved
the DHS "Family Service Plan" dated December 31, 2019, signed by
Dosland.  A periodic review hearing was set for April 28, 2020.
The periodic review hearing was continued to July 7, 2020,
apparently because of the COVID-19 pandemic.

On June 23, 2020, Child's guardian ad litem (**GAL**)
reported that Father and Mother "abruptly left Maui for New
Mexico several weeks ago without notifying anyone involved in
this case.  It is unknown if Mother and Father are currently
engaged in any services."

Dosland filed a "Safe Family Home Report" on June 29,
2020.  Father filed a position statement on July 2, 2020.  Father
stated that Child "should be in a legal guardianship with
paternal [Grandfather]" in New Mexico.

The July 7, 2020 hearing was conducted by Webex.
Father and Mother appeared with their respective counsel.
Dosland and Grandfather also appeared.  Dosland reported that
Father and Mother had moved to "New Mexico slash Texas and they

---

[2]      ICPC is an acronym for the Interstate Compact on Placement of
Children.  ICPC provides for the legal transport of a child between states in
a foster or adoption placement.  See Hawaii Revised Statutes Chapter 350E
(2015).

are not planning on returning . . . so we have started an ICPC request for a home study[.]"  The family court approved DHS Family Service Plans (one for Father, one for Mother) dated July 7, 2020, each signed by Dosland.  A permanency hearing was set for November 17, 2020.  The family court also ordered a "STATUS RE: ICPC."

The November 17, 2020 hearing was conducted by Webex. Father and Mother appeared with their respective counsel. Dosland and Grandfather also appeared.  The family court ordered: "Once the ICPC is approved, [Child] is authorized to travel to New Mexico to[] Paternal Grandfather[.]"  A continued hearing on ICPC status was set for December 15, 2020.

The December 15, 2020 hearing was conducted by Webex. Father and Mother appeared with their respective counsel. Dosland and Grandfather also appeared.  Father and Mother stipulated to the DHS **"Permanent Plan"** dated December 15, 2020, and waived the requirement of a motion.  The family court approved the Permanent Plan.  A review hearing was set for June 15, 2021.

An ICPC report was filed on April 9, 2021.  Child had been placed in relative foster care with Grandfather in New Mexico on March 17, 2021.

On June 2, 2021, the GAL requested, and the family court issued, an order authorizing "the CASA Program in Albuquerque, New Mexico to conduct courtesy home visits to ensure that the well-being of [Child] is satisfactory in the child's best interest[.]"

On June 8, 2021, the GAL recommended that Child "remain[] in permanent custody of DHS with subsequent goal of legal guardianship/adoption to her [Grandfather]."

At the June 15, 2021 hearing, DHS permanency social worker Anne **Fitzpatrick** explained that Child was placed with Grandfather on March 17, 2021, and needed to be in placement for six months under ICPC rules.  She reported that "New Mexico is

supervising, providing supervisory visits."  The family court set a further hearing for September 14, 2021.

On September 1, 2021, the GAL reported that Child "is a happy and healthy baby girl who is doing well in the home of her paternal grandfather.  Guardianship of [Child] to [Grandfather] is in her best interest."  The GAL recommended continued foster custody until guardianship to Grandfather was granted.

The September 14, 2021 hearing was continued to September 28, 2021 by stipulation.  The September 28, 2021 hearing was conducted over Zoom.  Father and Mother appeared with their respective counsel.  Fitzpatrick also appeared.  The family court continued the Permanent Plan and set a further hearing for October 26, 2021.

On October 13, 2021, DHS filed a petition in a separate proceeding to appoint Grandfather as guardian of the person for Child (the **Guardianship Case**).

The October 26, 2021 hearing in the Temporary Foster Custody Case was conducted over Zoom.  Father and Mother appeared with their respective counsel.  Fitzpatrick and Grandfather also appeared.  The family court set a further permanency hearing for November 9, 2021.

The November 9, 2021 hearing was conducted over Zoom. Father and Mother appeared with their respective counsel. Fitzpatrick and Grandfather also appeared.  Over Father's objection, the court set a status hearing for January 25, 2022, and a contested guardianship hearing for February 11, 2022.

On January 24, 2022, Proud Moments filed a treatment request and a diagnostic evaluation and individualized service plan after Child was diagnosed with autism spectrum disorder.

The January 25, 2022 hearing was conducted over Zoom. Father and Mother appeared with their respective counsel. Fitzpatrick also appeared.  The February 11, 2022 contested case hearing was continued to March 18, 2022.

On March 4, 2022, Mother filed a motion to set aside her stipulation to the DHS Permanent Plan and Father filed a

motion to withdraw his stipulation to jurisdiction and to dismiss the Temporary Foster Custody Case or, in the alternative, for reunification with Child.  Both motions were denied.  Father and Mother have not appealed from the order denying the motions.

A consolidated contested case hearing for the Temporary Foster Custody Case and the Guardianship Case was held on March 18, 2022.  The family court took judicial notice of the DHS Family Service Plans dated December 31, 2019, and July 7, 2020, all of which had been signed by Dosland.  The family court heard testimony from Father, Mother, Grandfather,[3] the GAL, and Fitzpatrick (among others), but not from Dosland.  The family court entered separate but identical findings of fact and conclusions of law in each case on May 27, 2022.

On June 15, 2022, the family court entered an order terminating jurisdiction in the Temporary Foster Custody Case based upon the successful guardianship in the Guardianship Case.  No appeal was taken from that order.  In the Guardianship Case, the family court entered the Order Appointing Guardian and issued Letters of Guardianship to Grandfather on June 16, 2022.  These appeals followed.[4]

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion.  Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

---

[3]     Father, Mother, and Grandfather participated over Zoom.

[4]     Father's notice of appeal was filed on June 12, 2022, and Mother's notice of cross-appeal was filed on June 13, 2022, after the family court announced its decision to appoint Grandfather as Child's guardian, but before entry of the Order Appointing Guardian.  We consider the notices of appeal and cross-appeal to have been filed immediately after entry of the Order Appointing Guardian.  See Hawaiʻi Rules of Appellate Procedure, Rule 4(a)(2).

**I.**

Father contends that the family court abused its discretion by allowing Fitzpatrick to testify during the contested case hearing, rather than Dosland (who prepared DHS reports about which Fitzpatrick testified).  Although not stated in a point of error, Mother also argues that she was not able to cross-examine Dosland about the Family Service Plans because Dosland did not testify at the contested case hearing.

Father and Mother both rely upon Hawaii Revised Statutes (**HRS**) § 587A-18(d).  The statute provides, in relevant part:

> (c)  The department [of human services] or other authorized agencies shall submit to the [family] court each report, in its entirety, pertaining to the child or the child's family that has been prepared by a child protective services multidisciplinary team or consultant.
>
> (d)  A written report submitted pursuant to this section shall be admissible and relied upon to the extent of its probative value in any proceeding under this chapter, subject to the right of any party to examine or cross-examine the preparer of the report.

HRS § 587A-18 (2018).  The statute gave Father and Mother the right to examine or cross-examine Dosland, but it did not require that DHS call Dosland as a witness in lieu of Fitzpatrick.  See In re TC, No. CAAP-21-0000053, 2021 WL 6054831, *4 (Haw. App. Dec. 20, 2021) (SDO) (noting that "admission of a report into evidence under HRS § 587A-18(d) is not contingent upon actual cross examination of the preparer of the report").

DHS listed Fitzpatrick, not Dosland, on its witness list for the contested case hearing.  The record does not indicate that Father or Mother subpoenaed Dosland or otherwise moved to compel her attendance to testify at the contested case hearing.  See In re Doe, 77 Hawaiʻi 109, 116, 883 P.2d 30, 37 (1994) ("[H]aving failed to file a motion to compel Braendlein's testimony at trial, despite prior notice to Mother by DHS that Braendlein would not be called as a witness, Mother effectively waived her right to cross examine Braendlein.").  The family

court does not abuse its discretion by not requiring testimony from a witness who was not listed, called, subpoenaed, or otherwise required to appear at the contested case hearing.

Fitzpatrick testified that she worked for DHS as a permanency social worker. The family court granted DHS's request to qualify Fitzpatrick as an expert witness under HRS § 587A-19.[5] As an expert witness, Fitzpatrick was allowed to testify about her opinions on child protective or child welfare services. See Hawaii Rules of Evidence (**HRE**) Rules 702 and 703. Father argues that Fitzpatrick's opinions were based upon inadmissible hearsay — statements contained in Dosland's reports and other DHS documents in Child's case file. Under HRE Rule 703, however: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." See also Swink v. Cooper, 77 Hawaiʻi 209, 215, 881 P.2d 1277, 1283 (App. 1994). In this case, the DHS records were admissible under HRS § 587A-18. The family court did not err by allowing Fitzpatrick to testify.

**II.**

Mother challenges the family court's findings of fact (**FOF**) nos. 16, 26, and 27, and conclusions of law (**COL**) nos. 3, 4, and 6, and Father also challenges COL nos. 3 and 6.

The label of a finding of fact or a conclusion of law does not determine the standard of review. City & Cnty. of Honolulu v. Honolulu Police Comm'n, 151 Hawaiʻi 56, 62, 508 P.3d

---

[5] HRS § 587A-19 (2018) provides:

A person employed by the department [of human services] as a social worker in the area of child protective services or child welfare services shall be presumed to be qualified to testify as an expert on child protective or child welfare services. Any party may move the court to qualify a person employed by the department as a social worker in the area of child protective services or child welfare services called to testify as an expert on child protective or child welfare services.

851, 857 (App. 2022) (citing <u>Crosby v. State Dep't of Budget & Fin.</u>, 76 Hawaiʻi 332, 340, 876 P.2d 1300, 1308 (1994)).  The question whether a determination is a finding of fact or a conclusion of law is a question of law; the accuracy of the label given by the trial court is freely reviewable by an appellate court.  <u>Kilauea Neighborhood Ass'n v. Land Use Comm'n</u>, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988).

   The family court's findings of fact are reviewed under the "clearly erroneous" standard.  <u>Fisher</u>, 111 Hawaiʻi at 46, 137 P.3d at 360.  A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made.  <u>Id.</u>  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  <u>Id.</u>  "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  <u>Id.</u> (citation omitted).

   The family court's conclusions of law are ordinarily reviewed de novo, under the right/wrong standard, "and are freely reviewable for their correctness."  <u>Fisher</u>, 111 Hawaiʻi at 46, 137 P.3d at 360.  However, when a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each individual case.  <u>Est. of Klink ex rel. Klink v. State</u>, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).  A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned.  <u>Id.</u>

   The family court found:

> 16. Mother and Father have not engaged in any services in New Mexico.

FOF no. 16 was supported by Fitzpatrick's testimony. Father and Mother both testified during the contested case hearing, but offered no testimony about engaging in the services in New Mexico required by the July 7, 2020 Family Service Plans. FOF no. 16 was not clearly erroneous.

The family court found:

26. Ms. Fitzpatrick believes it is in [Child]'s best interest to have [Grandfather] appointed as her legal guardian.

27. Ms. Fitzpatick does not believe it is in [Child]'s best interest to reunify with her parents because they have never been her primary caregivers.

FOF nos. 26 and 27 were supported by Fitzpatrick's testimony. They were not clearly erroneous.

The family court concluded:

3. Mother and Father are willing, but unable, to exercise their parental rights.

4. Appointment of a legal guardian for [Child] is in her best interest.

. . . .

6. [Grandfather] is appointed as [Child]'s legal guardian pursuant to Hawaii Revised Statutes § 560:5-204(b)(3).

COL nos. 3 and 4 were mixed findings of fact and conclusions of law. They were supported by the following unchallenged findings of fact, which are binding on the parties and this court. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002):

8. Mother and Father each had two (2) Court ordered Service Plans. These Service Plans were dated December 31, 2019 and July 7, 2020. Mother and Father agreed to both Service Plans.

. . . .

13. Mother and Father did not complete their Court ordered Service Plans.

. . . .

19. [Child] is currently placed with [Grandfather] in Albuquerque, New Mexico. [Child] has been with [Grandfather] since March 17, 2020.

20. According to Ms. Fitzpatrick, [Child] is thriving in [Grandfather]'s care.

21. [Grandfather] has been working with the DHS courtesy worker in New Mexico, Thelma Rourke, in getting medical assessments and evaluations for [Child] due to concerns regarding her development.

22. [Child] has been identified as being on the autism spectrum.

23. [Child] attends a specialized school for autistic children. This school is about five (5) minutes from [Grandfather]'s home.

24. [Child] has communication difficulties, so she is now learning the PECS system of communication. This system helps children communicate by identifying what they want or need through pictures. [Grandfather] is helping [Child] learn this system of communication.

25. [Child] needs stability and the predictability of a day-to-day routine in order to thrive. [Grandfather] is currently providing [Child] with this stability and predictability.

. . . .

30. Mother and Father have never contacted Ms. Fitzpatrick or Ms. Rourke.

31. Neither Mother nor Father completed a psychological evaluation as ordered by the Court.

. . . .

42. [Grandfather] takes care of [Child] full-time. [Grandfather] collects social security due to a work injury. This income is sufficient to support himself and [Child].

. . . .

46. [Grandfather] is willing to do whatever is necessary to help [Child]. [Grandfather] wants to do whatever is in [Child]'s best interest.

47. [Grandfather] understands the powers and duties of being a legal guardian and he is willing to abide by these duties and responsibilities.

48. [Grandfather] provides visitation for Mother and Father with [Child].

49. [Grandfather] has tried to discuss [Child]'s special needs with Mother and Father, but Mother is not very engaged in this kind of conversation and Father is

engaged, but he is skeptical of [Child]'s autism diagnosis.

50. If appointed as [Child]'s legal guardian, [Grandfather] will continue visitation with Mother and Father if appropriate.

51. [Grandfather] understands that it is important for [Child] to know her parents, provided they are appropriate and safe.

. . . .

53. The GAL is in support of [Grandfather] being appointed as [Child]'s legal guardian and that this legal guardianship is in [Child]'s best interest.

. . . .

55. Mother and Father were unable to pick up on [Child]'s needs during supervised visitations on Maui, such as badly needing a diaper change.

. . . .

58. Since moving to New Mexico, Mother has not talked to anyone from New Mexico social services.

. . . .

66. Father requested guardianship of [Child] with his father because he wanted her with family.

. . . .

73. Father agrees that [Grandfather] is following the recommendations for [Child]'s diagnosed disability.

COL nos. 3 and 4 were not clearly erroneous. <u>Cf.</u> <u>In re Doe</u>, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (noting that family court's determinations under HRS § 587-73(a) present mixed questions of law and fact, review under "clearly erroneous" standard).

Given those facts, the family court correctly applied HRS § 560:5-204(b)(3) (2018), which provides:

> (b) The court may appoint a guardian for a minor if the court finds the appointment is in the minor's best interest, and:
>
> . . . .

11

(3)  The parents are unwilling or unable to exercise their parental rights.

COL no. 6 was not wrong.

## III.

For the foregoing reasons, the Order Appointing Guardian entered by the family court on June 16, 2022, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 2, 2023.

On the briefs:

Davelynn M. Tengan,
for Appellant EC.

Yukari Murakami,
for Cross-Appellant UH.

Adriel C. S. Menor,
Julio C. Herrera,
Deputy Attorneys General,
State of Hawaiʻi,
for Petitioner-Appellee
Department of Human Services.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge